# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 26, 2009                    Decided June 12, 2009

No. 08-1196

WESTAR ENERGY, INC., ET AL., PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

———

Consolidated with 08-1205

———

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

———

*Martin J. Bregman* argued the cause for petitioners. With him on the briefs were *Donald K. Dankner*, *Raymond B. Wuslich*, and *Margaret H. Claybour*.

*Kathrine L. Henry*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Cynthia A. Marlette*, General Counsel, and *Robert H. Solomon*, Solicitor.

Before: HENDERSON, TATEL and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Exercising its statutory authority to ensure that rates for the sale of wholesale electric power are just and reasonable, the Federal Energy Regulatory Commission generally allows wholesale electricity sellers to sell at market-based rates – unless the wholesaler possesses market power in a particular region, in which case it must make sales at cost-based prices. FERC's approach raises the issue at the heart of this dispute: Suppose a wholesaler sells energy in a region where it has market power but the energy ultimately is used in a region where the wholesaler does not possess market power. Because of the difficulty in monitoring transactions to determine where energy is ultimately used, the Commission has ruled that the dispositive factor in those circumstances is whether the wholesaler has market power at the point of sale – not where the energy is actually used or "sinks." *See* Order No. 697, Market-Based Rates for Wholesale Sales of Electric Energy, Capacity and Ancillary Services by Public Utilities, 72 Fed. Reg. 39,904, 40,000 (July 20, 2007).

In this case, the Commission followed the point of sale test – not a sink-based test – and ordered two electricity wholesalers to make refunds to customers to the extent they had previously made sales in areas where they have market power at market-based prices. The wholesalers challenge the Commission's decision as arbitrary and capricious under the Administrative Procedure Act. We conclude that FERC's decision was reasonable, and we therefore deny the petitions for review.

3

I

Electricity generators convert energy from coal, nuclear power, natural gas, or other sources into electricity. The generators then sell the electricity – either (i) as wholesalers to utilities that serve retail customers or (ii) directly to retail customers.

Congress has assigned the Federal Energy Regulatory Commission the responsibility to ensure that all rates for jurisdictional sales are just and reasonable. 16 U.S.C. § 824d. FERC divides the areas served by an electricity wholesaler into two categories: mitigated and non-mitigated areas. Mitigated areas are those regions where a wholesaler possesses market power. Sales in a mitigated area must occur pursuant to a cost-based tariff to protect customers from the wholesaler's market power. In non-mitigated areas, the wholesaler may make sales under a market-based tariff – that is, a tariff that allows the wholesaler to "enter into freely negotiated contracts with purchasers." *Morgan Stanley Capital Group, Inc. v. Pub. Util. Dist. No. 1*, 128 S. Ct. 2733, 2741 (2008).

Wholesalers often make "export sales" to utility customers who in turn sell energy at retail to end users outside of the wholesalers' mitigated areas. Westar Energy, Inc. and the Empire District Electric Company are electricity wholesalers that sell to utility customers outside of their mitigated areas.

In May 2005, Westar and Empire filed tariffs that proposed (i) cost-based rates for sales to customers serving energy needs within their mitigated areas and (ii) market-based rates for sales to customers when the energy would be used outside their mitigated areas. Under their proposals, the

location where the energy is ultimately used – or "sinks" – would determine whether the sale would be made at market rates or cost-based rates. On several occasions between November 2005 and March 2006, FERC accepted similar sink-based tariffs filed by other wholesalers. *See, e.g.*, *Carolina Power & Light Co.*, 113 FERC ¶ 61,130 (2005).

In March 2006 – before officially accepting petitioners' proposed tariffs – FERC changed course and began rejecting the sink-based approach. *MidAmerican Energy Co.*, 114 FERC ¶ 61,280 (2006). In August 2006, consistent with this new policy, FERC denied Empire's sink-based tariff and ordered it to pay refunds for sales made within its mitigated area that occurred after May 16, 2005, the earlier established refund effective date. In September, the Commission followed the same course with Westar, ordering refunds for offending sales made after June 7, 2005, previously established as Westar's refund effective date. Both parties petitioned for rehearing.

In July 2007, while those petitions for rehearing were pending, the Commission published Order No. 697, Market-Based Rates for Wholesale Sales of Electric Energy, Capacity and Ancillary Services by Public Utilities, 72 Fed. Reg. 39,904 (July 20, 2007). This Order – issued after a notice-and-comment rulemaking – rejected the sink-based test because FERC concluded that it "is unrealistic to believe" that such sales "can be traced to ensure that no improper sales are taking place" and noted the "complex administrative problems that would be associated with trying to monitor" those sales. *Id.* at 40,000.

Relying on Order No. 697 and its recent precedents, FERC affirmed the Empire and Westar decisions on rehearing. In this Court, the petitioners now contend that

those orders are arbitrary and capricious under the Administrative Procedure Act. Our review under that test is of course deferential.

## II

Petitioners advance a variety of arguments assailing FERC's actions in this case.

*First*, petitioners suggest that FERC acted unreasonably by imposing and applying a point of sale test rather than a sink-based test. But in Order No. 697, FERC thoroughly explained the problem with a sink-based test, noting the "complex administrative problems that would be associated with trying to monitor" that regime and concluding that it "is unrealistic to believe that" such sales "can be traced to ensure that no improper sales are taking place." Order No. 697, Market-Based Rates for Wholesale Sales of Electric Energy, Capacity and Ancillary Services by Public Utilities, 72 Fed. Reg. 39,904, 40,000 (July 20, 2007). FERC reiterated that analysis in its orders in this case. Petitioners do not provide any convincing reason to doubt the legitimacy of FERC's monitoring concern. We thus find no basis for disturbing FERC's reasoned decision to apply a point of sale test rather than a sink-based test to petitioners' market-based tariffs.

In that regard, it bears mention that a wholesaler such as Westar or Empire can easily comply with the FERC rule and still make sales into other regions at market-based rates. A wholesaler simply needs to ensure that title passes at or beyond the metered boundary between the mitigated and non-mitigated areas, instead of inside a mitigated area. *See* Tr. of Oral Arg. at 6 (petitioners' counsel: "when Westar became aware of the *MidAmerican* case in March of 2006, we fairly quickly implemented that approach, and it was very easy to

do that because all we had to do was to change where title passed").

*Second*, petitioners alternatively contend that FERC did not sufficiently explain its March 2006 policy change from a sink-based test to a point of sale test.  But as already noted, FERC carefully explained its reasoning in Order No. 697 and its orders in this case, and that explanation was more than adequate under the arbitrary and capricious test.  The fact that FERC changed its approach required no additional or special explanation.  *Cf. FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1810 (2009) ("We find no basis in the Administrative Procedure Act or in our opinions for a requirement that all agency change be subjected to more searching review."); *id.* (*State Farm* did not hold or imply that every "policy change must be justified by reasons more substantial than those required to adopt a policy in the first instance"); *id.* at 1811 (agency's reasoning is sufficient if it shows that a new policy "is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better"); *id.* at 1823 (Kennedy, J., concurring) ("The question in each case is whether the agency's reasons for the change . . . suffice to demonstrate that the new policy rests upon principles that are rational, neutral, and in accord with the agency's proper understanding of its authority.").

*Third*, petitioners argue that FERC's decision to order retroactive refunds was arbitrary and capricious because, in their view, they were entitled to rely on FERC's acceptance of the sink-based test at least until March 2006 when FERC changed course.  As a result, petitioners argue that FERC could not order them to pay refunds for sales made between mid-2005 (their FERC-established effective refund dates) and March 17, 2006.

This argument is unavailing. After filing their tariffs, petitioners knew that any sales at unjust or unreasonable rates before the Commission's approval of their tariffs might be subject to refund liability retroactive to the refund effective date. *See Empire Dist. Elec. Co.*, 110 FERC ¶ 61,214, at 61,806 (2005); *Westar Energy Inc.*, 110 FERC ¶ 61,316, at 62,231 (2005). So FERC's decision to impose refund liability did not impermissibly upset any settled expectations. Indeed, one purpose for establishing a refund date is to eliminate the need to consider reliance-based arguments such as this. Petitioners' argument blinks that reality.

*Fourth*, petitioners contend that FERC acted unreasonably by declining to exercise its authority to waive their refund liability. Our review of an agency's denial of a waiver request is "extremely limited." *San Diego Gas & Elec. Co. v. FERC*, 904 F.2d 727, 731 (D.C. Cir. 1990). FERC's general practice is to order refunds when it concludes that a wholesaler with market power has been selling energy at unjust or unreasonable rates. *See AEP Power Mktg., Inc.*, 108 FERC ¶ 61,026, at 61,135 (2004). And FERC has not waived refund liability for any wholesaler similarly situated to petitioners here. *See MidAmerican Energy Co.*, 123 FERC ¶ 61,013, at 61,052 (2008); *Okla. Gas & Elec. Co.*, 123 FERC ¶ 61,012, at 61,046 (2008); *Carolina Power & Light Co.*, 114 FERC ¶ 61,294, at 62,046 (2006). We therefore find nothing unreasonable about the Commission's adhering to its standard approach in denying petitioners' waiver request. Petitioners point to FERC's decision in *South Carolina Electricity & Gas Co.*, 121 FERC ¶ 61,263 (2007), as an example of the Commission declining to impose refund liability on a similarly situated wholesaler. There, however, the wholesaler represented to FERC that it had not made any offending sales under its sink-based tariff. Because FERC accepted this

representation, it had no occasion to address the issue of refund liability.

\* \* \*

We deny the petitions for review.

*So ordered.*