# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 2, 2018          Decided March 6, 2018

No. 16-1382

LOUISIANA PUBLIC SERVICE COMMISSION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

ARKANSAS PUBLIC SERVICE COMMISSION AND ENTERGY
SERVICES, INC.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Michael R. Fontham* argued the cause for petitioner. With him on the briefs were *Noel J. Darce*, *Dana M. Shelton*, and *Justin A. Swaim*. *Paul L. Zimmering* entered an appearance.

*Holly E. Cafer*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Clifford M. Naeve* argued the cause for intervenors. With him on the brief were *Gerard A. Clark*, *Matthew W.S. Estes*,

*Gregory W. Camet*, *Glen Ortman*, *Dennis Lane*, and *Paul Randolph Hightower*. *Jennifer S. Amerkhail* entered an appearance.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: After finding a rate unjust and unreasonable under § 206 of the Federal Power Act, 16 U.S.C. § 824e, the Federal Energy Regulatory Commission sets a new just and reasonable rate to take effect for the future. In addition, the Commission "may order" refunds for a portion of the period in which the unreasonable rate was in effect. *Id.* § 824e(b). Here the Commission found in 2004 that certain of Entergy Corporation's rates were unjust and unreasonable. *Opinion No. 468*, 106 FERC ¶ 61,228, PP 60–77 (2004). After a good deal of vacillation, it refused to require refunds. 135 FERC ¶ 61,218, PP 20–25 (2011); 142 FERC ¶ 61,211, PP 49–77 (2013). On a challenge by the Louisiana Public Service Commission ("LPSC"), we remanded the case to the Commission, finding, as urged by LPSC, that the Commission had failed to adequately "explain its reasoning in departing from its 'general policy' of ordering refunds when consumers have paid unjust and unreasonable rates." *Louisiana Public Service Commission v. FERC*, 772 F.3d 1297, 1298 (D.C. Cir. 2014) ("*Louisiana III*"). (The numbering will soon be clear.)

On remand, the Commission clarified that it actually has no general policy of ordering refunds in cases of rate design. 155 FERC ¶ 61,120, P 17 (2016) ("*Order on Remand*"); 156 FERC ¶ 61,221, P 20 (2016) ("*Rehearing Order*"). Now that the Commission has corrected its characterization of its own precedent, we find that the Commission's denial of refunds

accords with its usual practice in cost allocation cases such as this one. We also find that the Commission adequately explained its conclusion that it would be inequitable to award refunds in this case. The Commission did not abuse its discretion; we deny the petition for review.

\* \* \*

Much of the factual and procedural background has been recited at length in our three prior decisions. See *Louisiana Public Service Commission v. FERC*, 184 F.3d 892, 894–97 (D.C. Cir. 1999) ("*Louisiana I*"); *Louisiana Public Service Commission v. FERC*, 482 F.3d 510, 513–15 (D.C. Cir. 2007) ("*Louisiana II*"); *Louisiana III*, 772 F.3d at 1299–1302. We repeat here only what is necessary for the present decision.

More than two decades ago, LPSC filed a complaint under § 206(a), 16 U.S.C. § 824e(a), challenging Entergy's allocation of capacity costs among its various operating companies. At the time, Entergy did so on the basis of the companies' total usage at the time of peak demand, regardless of whether the load was "firm" (entitling the customer to service at any time) or "interruptible" (subject to Entergy's curtailment at any time of insufficient capacity). When Entergy had set these rates, the system was "awash in capacity" and projected firm load would have required no more capacity. As a result, charging interruptible load for capacity costs was of comparatively little importance in terms of signaling to customers whether to use firm or interruptible service, or to Entergy whether to invest in more capacity. Over time, however, Entergy's capacity became inadequate to handle all demand; it changed its planning criteria so that, in deciding whether to add capacity, it no longer counted interruptible load. *Louisiana I*, 184 F.3d at 896.

The Commission initially rejected LPSC's complaint, 76 FERC ¶ 61,168 (1996); 80 FERC ¶ 61,282 (1997), but we reversed in *Louisiana I*. The Commission had in 1981 adopted the principle that costs should be allocated to customers according to the principle of cost causation; we rejected the Commission's explanations for failing to adhere to that principle. As we explained, interruptible customers do not cause the utility to incur capacity costs; by definition, the utility can curtail such service when load exceeds capacity. Charging them for capacity costs thus creates an uneconomic disincentive to the use of interruptible service; customers are dissuaded from using interruptible service even where the utility's costs of providing that service fall well below the potential benefit to the customer. By the same token, to the extent that such a cost allocation relieves *firm* customers of the burden of covering capacity costs that they do cause the utility to incur, it provides an inadequate disincentive to the choice of such service and signals to the utility more need for adding capacity than really exists. *Louisiana I*, 184 F.3d at 896–97; JAMES C. BONBRIGHT, PRINCIPLES OF PUBLIC UTILITY RATES 494–96 (2d ed. 1988); 1 KAHN, ECONOMICS OF REGULATION 89–95 (2d ed. 1988).

On remand from *Louisiana I*, the Commission ultimately found Entergy's inclusion of interruptible load in the cost allocation equation to be unjust and unreasonable. It ordered the cost allocation changed for the future, but denied LPSC's request for refunds, which § 206(b), 16 U.S.C. § 824e(b), gave it authority to order for a 15-month period starting at a date set by the Commission at the outset of the proceedings. *Opinion No. 468*, 106 FERC ¶ 61,228, PP 60–77, 82–89 (2004), *rehearing denied, Opinion 468-A,* 111 FERC ¶ 61,080, PP 10–22. Because Louisiana customers relied on interruptible service in a higher proportion than other Entergy customers, they gained from the ordered future change in cost allocation, and would have gained more from any refund. In a series of

orders, the Commission took a considerable variety of positions on refunds, culminating in denial in the orders reviewed in *Louisiana III* and in the present *Order on Remand* and *Rehearing Order*.

\* \* \*

*Louisiana III*'s conclusion determines our task here. There we were convinced by LPSC's argument that the Commission had failed to "'reasonably explain the departure' from its 'general policy' of ordering refunds when consumers have paid unjust and unreasonable rates." *Louisiana III*, 772 F.3d at 1303. We acknowledged that the Commission was free to "depart from a prior policy or line of precedent, but it must acknowledge that it is doing so and provide a reasoned explanation." *Id*. We find that the Commission has made its historic practice clear and justified its application of that practice here.

Above all, the Commission has clarified its previously muddled position, explaining that—despite its prior representations to the contrary—it has no generally applicable policy of granting refunds. *Order on Remand,* 155 FERC ¶ 61,120, P 17. The Commission now recognizes that its previous characterization of its refund policy does "not accurately represent that policy as both the Commission and the courts have described it in the past." *Id*. The Commission found that it had only twice—both times in the course of these proceedings—referred to a "general policy" in favor of refunds. *Id*. at P 18.

The Commission does "generally award[] refunds where there have been overcharges that result in overcollection of revenue." *Rehearing Order*, 156 FERC ¶ 61,221, P 10. But a series of Commission decisions, cited in the *Order on Remand*, 155 FERC ¶ 61,120, P 25 & n.58, makes clear that the

Commission's default position is quite the opposite in the set of cases to which this belongs: ones in which it has found a rate unjust and unreasonable because of a flaw in rate design, such as cost allocation (at least so long as there is no violation of the filed rate doctrine). In such instances (putting aside some filed rate violations), the utility has received no net over-recovery. See *id*. "[I]n a case where the company collected the proper level of revenues, but it is later determined that those revenues should have been allocated differently, the Commission traditionally has declined to order refunds." *Black Oak Energy, LLC*, 136 FERC ¶ 61,040, P 25 (2011); see also *Occidental Chem. Corp.*, 110 FERC ¶ 61,378, P 10 (2005) ("The Commission's long-standing policy is that when a Commission action under section 206 of the FPA requires only a cost allocation change, or a rate design change, the Commission's order will take effect prospectively."); *Consumers Energy Co.*, 89 FERC ¶ 61,138, 61,397 (1999) ("This case involves a change in rate design, that, while appropriate on a prospective basis, is inappropriate for retroactive application. The Commission's policy, albeit discretionary, is to avoid retroactive application of changes in rate design."); *S. Co. Servs., Inc.*, 64 FERC ¶ 61,033, 61,332 (1993) (explaining that where the "sole issue" is cost "apportionment among the operating companies," the Commission's typical practice is not to issue refunds).

Apart from noting that in such cases the utility has received no net over-recovery, the Commission rests this default position on its belief that two circumstances are usually present in such cases. *Order on Remand,* 155 FERC ¶ 61,120, P 28. First, it would be difficult for the utility to recover its costs fully. The sums that one set of customers lost through allocation of excessive costs will usually be matched by unduly low rates to another set, from whom it would be difficult or inequitable to extract recompense. Second, customer firms that had made operational decisions in reliance on one set of rates

would be unable to "undo" those transactions retroactively in light of the new, corrected rates; a refund would, at least in part, pull the economic rug out from under those transactions.

In the present case, LPSC's briefs do not respond to these Commission decisions. Pressed on the point at oral argument, counsel for LPSC offered two purported distinctions. First, counsel observed correctly that several of the cases were under § 205 of the Federal Power Act, 16 U.S.C. § 824d. But since § 205 also provides that the Commission "may" require a refund where it finds a rate to have been unjust and unreasonable, *id*. § 824d(e), it is unclear why the Commission should disregard its § 205 cases in the § 206 context.

Second, counsel noted that many of the cases invoked by the Commission did not involve a holding company, such as Entergy. Counsel failed to explain, however, why that should affect the Commission's general principle as to refunds in rate design cases.

After oral argument, LPSC directed us to its attempt to distinguish these cases in the run-up to *Louisiana III*. See Petitioner's Br. at 52–54, *Louisiana III*, 772 F.3d 1297 (2014) (No. 13-1155). But even if these arguments had been renewed before us, we would find them unavailing. In its previous briefing, LPSC emphasized that the cited cases involved situations in which utilities would likely suffer a loss of revenue and an under-recovery of costs. That of course is quite true, as our summary of the cases and the Commission's reasoning make clear. LPSC then argued that the cases did not support the Commission's denial of refunds here. *Id*. That was true in the 2014 case, but is no longer true, because the Commission has—reasonably—changed its position on the feasibility of recoupment by Entergy.

In the decision under review in 2014, the Commission had—without explanation—disclaimed any reliance on a risk of under-recovery. See 142 FERC ¶ 61,211, P 63; see also *Louisiana III*, 772 F.3d at 1304. We noted that many of the cases in which the Commission had refused to order refunds involved at least "the possibility of under-recovery," *Louisiana III*, 772 F.3d at 1304, but, because of the Commission's disclaimer, we found those cases inapposite.

The Commission has now reversed its prior disclaimer and affirmatively explained why there is at least a risk of under-recovery. See *Order on Remand*, 155 FERC ¶ 61,120, PP 31–32.[1] Specifically, the Commission explained that Entergy sought to recover from retail customers surcharges to pay for certain other refunds previously ordered in this proceeding, *id.* at P 32; see 120 FERC ¶ 61,241, P 9, but the Arkansas Commission rebuffed Entergy, asserting that the surcharges would violate the filed rate doctrine and constitute retroactive ratemaking, *Order on Remand*, 155 FERC ¶ 61,120, P 32. As the Commission concedes, the ultimate outcome of the Arkansas Commission proceedings is uncertain (if Entergy prevails, the Arkansas Commission's order will be reversed), but the Commission identifies definite evidence of at least a non-trivial risk of under-recovery—one factor that counsels against the issuance of refunds.

Second, the Commission offered a convincing answer to our query about the absence of evidence of "particular decisions" made in reliance on the old rate structure. First,

---

[1] The Commission's conclusion that there is a risk of under-recovery rests in part on its interpretation of *City of Anaheim v. FERC*, 558 F.3d 521 (D.C. Cir. 2009). Finding that the Commission would have reached the same conclusion about under-recovery even absent reliance on *City of Anaheim*, we do not address the validity of the Commission's interpretation of that case.

since the object of sound cost allocation is to influence customer behavior by making those who "cause" the incurrence of costs to bear those costs and adjust their consumption accordingly (so that costs will be incurred only up to the point that is justified by customer benefit, evidenced by the customer's willingness to pay), we may fairly infer that their purchase decisions reflected that principle. While we were concerned in 2014 that "some amount of reliance is likely to be present every time the Commission considers ordering refunds," *Louisiana III*, 772 F.3d at 1305–06, it becomes apparent from the cases cited at footnote 58 of the *Order on Remand* that that is exactly the Commission's point: its general tendency to deny refunds in cost allocation cases stems from the high correlation between such reliance and that type of case. See, e.g., *Black Oak Energy, LLC*, 136 FERC ¶ 61,040, PP 25–28 (2011); *Occidental Chem. Corp.*, 110 FERC ¶ 61,378, PP 10–12 (2005). (Of course in cases where there has been over-recovery, the customers will also have rested their decisions on the prices previously applied, but the only customers affected will be ones getting refunds from the utility, and they will obviously not complain despite their inability to alter prior decisions.) Second, LPSC itself, in objecting to Entergy's prior cost allocation system, invoked the desirability of correcting customers' incentives for the purpose of changing their behavior. *Rehearing Order*, 156 FERC ¶ 61,221, P 62; see also *Order on Remand*, 155 FERC ¶ 61,120, PP 34–35. That these past economic decisions cannot be revisited also justifies denying refunds here.

Finally, under the facts of this case, the Commission noted an additional equity militating against refunds: the disjunction between the beneficiaries of the old regime and those who would have to pay surcharges to ensure that each operating company fully recouped costs retroactively allocated to it. *Order on Remand*, 155 FERC ¶ 61,120, P 31. In part this referred to whatever customers might be said to have replaced

the earlier era's wholesale customers, which then accounted for about 15% of Entergy Arkansas's load but have now almost entirely ceased to buy from Entergy Arkansas. *Id.* Further, given the passage of time, surcharges would fall on current Entergy Arkansas customers for benefits enjoyed by "past customers, or a prior generation of customers." *Rehearing Order*, 156 FERC ¶ 61,221, P 67; see also *Order on Remand*, 155 FERC ¶ 61,120, P 36.

LPSC argues that the Commission was largely responsible for the lag between LPSC's original complaint and the Commission's most recent orders, and that the turnover in customers can therefore be at least in part laid at the Commission's door. Maybe so. But that would make it no more equitable to now force consumers who neither were at fault nor received any benefit to "pay back" consumers who were disadvantaged by the prior rate regime.

We note that the parties engaged in considerable argument as to the possible effect of § 206(c), 16 U.S.C. § 824e(c). It provides that in a proceeding "involving two or more electric utility companies of a registered holding company," refunds may *not* be awarded if they will be paid for "through an increase in the costs to be paid by other electric utility companies of such registered holding company," unless the Commission can determine that "the registered holding company would not experience any reduction in revenues which results from an inability" of such electric utility companies of the same holding company "to recover such increase in costs." 16 U.S.C. § 824e(c)(2). To the extent applicable, of course, the section would require the Commission to deny refunds if it could not conclude that the holding company will not suffer any reduction in revenues. But that is just what the Commission has independently chosen to do under § 206(b): it denied refunds in part because it could not conclude Entergy would be able to offset any refunds. Because we find that choice

reasonable, we need not address the parties' debate over § 206(c)'s applicability.

\* \* \*

The petition for review is

*Denied.*