# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――

Argued March 2, 2017        Decided April 4, 2017

No. 16-1003

NEXTERA DESERT CENTER BLYTHE, LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

CALIFORNIA INDEPENDENT SYSTEM OPERATOR CORPORATION
AND SOUTHERN CALIFORNIA EDISON COMPANY,
INTERVENORS

―――――

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

―――――

*John N. Estes III* argued the cause for petitioner. With him on the briefs were *Gerard A. Clark* and *John Lee Shepherd*, *Jr.*

*Elizabeth E. Rylander*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. On the brief were *Robert H. Solomon*, Solicitor, and *Ross R. Fulton*, Attorney.

*William H. Weaver* argued the cause for intervenors California Independent System Operator Corporation, et al.

With him on the brief were *Daniel J. Shonkwiler*, *Roger Collanton*, and *Rebecca A. Furman*.

Before: HENDERSON, TATEL and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In this petition for review, a major producer of solar power challenges orders of the Federal Energy Regulatory Commission denying its effort to obtain financial instruments known as Congestion Revenue Rights. Because FERC erroneously concluded that the relevant contract and tariff provisions unambiguously foreclose petitioner's request, we remand to the Commission so that it may "consider the question afresh in light of the ambiguity we see." *Cajun Electric Power Cooperative, Inc. v. FERC*, 924 F.2d 1132, 1136 (D.C. Cir. 1991).

**I.**

This case concerns two solar power plants in the California desert—the Genesis solar plant in Desert Center and the McCoy solar plant near Blythe—and a transmission project that connects them with customers in Southern California. Together, the facilities generate 500 megawatts of electricity, enough to power approximately 180,000 homes every year. *See* NEXTERA ENERGY RESOURCES PARTNERS, *Genesis Solar Energy Center*, https://goo.gl/tdbXt4; NEXTERA ENERGY RESOURCES PARTNERS, *McCoy Solar Energy Center*, https://goo.gl/mo3KlR. Producing all that power from sunlight requires an enormous scale: the Genesis plant alone occupies some 1,900 acres. BUREAU OF LAND MANAGEMENT, *Genesis Solar Energy Project*, https://goo.gl/8qdMRM.

Prior to completion of the two facilities, Genesis and McCoy entered into long-term agreements to sell their power to electric utilities, including Southern California Edison Company. Petitioner NextEra Desert Center Blythe, LLC was then formed to connect Genesis and McCoy to the grid. In August 2011, NextEra, Edison, and the California Independent System Operator (CAISO)—the authority tasked with operating transmission facilities in California—reached an agreement to govern the interconnection of Genesis and McCoy to the CAISO-controlled grid. Central to this case, that agreement identified the need for high-voltage transmission upgrades, known as the West of Devers Upgrades, in order to safely and reliably deliver electricity from the two solar plants.

NextEra, however, soon grew concerned that the permanent West of Devers Upgrades would not be completed in time for it to meet its obligations to the electric utilities. In response, CAISO and Edison identified a temporary fix, known as the Interim Project, to meet NextEra's needs in the meantime. By subsequent letter agreement, NextEra and Edison committed to the Interim Project, with Edison responsible for construction and NextEra footing the bill. The parties then amended their initial agreement to incorporate the letter agreement. For simplicity's sake, we will refer to the amended agreement and letter agreement together as the Interconnection Agreement.

In December 2014, CAISO informed NextEra that it planned to release Congestion Revenue Rights ("CRRs"). CRRs arise from CAISO's method for setting wholesale electricity prices, which builds the cost of congestion into the price of energy. *Sacramento Municipal Utility District v. FERC*, 616 F.3d 520, 524 (D.C. Cir. 2010) (explaining how CAISO sets wholesale electricity prices). Put simply, energy costs more in areas requiring the use of congested transmission

lines and less in areas that do not. *Id.* at 524–25. CRRs are financial instruments that are principally used to allow the holder to avoid paying congestion costs. *Id.* at 527. Because the holder of a CRR is entitled "to be paid the congestion costs associated with transmitting a given quantity of electricity between two specified points" a party that pays for transmission and holds a corresponding CRR will receive back from CAISO the amount it paid for congestion. *Id.* (citation omitted).

According to NextEra, it was initially shocked to learn that the Interim Project would result in the release of CRRs. Even so, NextEra informed CAISO that, in its view, it is entitled to receive CRRs associated with the Interim Project under section 36.11 of CAISO's tariff, which provides for the allocation of CRRs to "Project Sponsors of Merchant Transmission Facilities." CAISO and Edison disagreed. In response, and initiating the controversy before us, NextEra filed a complaint with FERC asking that the Commission direct CAISO to allocate it CRRs.

By order dated June 3, 2015, the Commission denied NextEra's complaint. *NextEra Desert Center Blythe, LLC v. CAISO*, 151 FERC ¶ 61,198, 2015 WL 3536557. NextEra filed a request for rehearing, which the Commission also denied. *NextEra Desert Center Blythe, LLC v. CAISO*, 153 FERC ¶ 61,208, 2015 WL 7345798 ("*NextEra Desert Center II*"). The two orders share a common rationale: according to the Commission, the terms of the Interconnection Agreement "clear[ly] and unambiguous[ly]" bar NextEra's attempt to receive CRRs under CAISO tariff section 36.11. *Id.* at *4. Given this interpretation, FERC "declin[ed]" to address whether NextEra would otherwise be "entitled to CRRs under CAISO tariff section 36.11" because, in FERC's view, that

provision is "inapposite" and "does not apply" to the Interim Project. *Id*. at \*4–5.

Following the Commission's denial of rehearing, NextEra filed this petition for review. Both Edison and CAISO sought leave to intervene, which we granted.

**II.**

Where, as here, we confront a challenge to FERC's reading of a tariff and related contracts, we review the "[Commission]'s interpretation under the Administrative Procedure Act's arbitrary and capricious standard of review, using a two-step, *Chevron*-like analysis." *Colorado Interstate Gas Co. v. FERC*, 599 F.3d 698, 701 (D.C. Cir. 2010) (citing 5 U.S.C. § 706(2)(A); *Old Dominion Electric Cooperative, Inc. v. FERC*, 518 F.3d 43, 48 (D.C. Cir. 2008)). First, we "consider *de novo* whether the [relevant language] unambiguously addresses the matter at issue. If so, the language . . . controls for we must give effect to the unambiguously expressed intent of the parties." *Ameren Services Co. v. FERC*, 330 F.3d 494, 498 (D.C. Cir. 2003) (citation and internal quotation marks omitted). If, however, there is ambiguity, "we defer to the Commission's construction . . . so long as that construction is reasonable." *Koch Gateway Pipeline Co. v. FERC*, 136 F.3d 810, 814–15 (D.C. Cir. 1998). Importantly, if FERC's decision rests on "an erroneous assertion that the plain language of the relevant wording is unambiguous[,] we must remand" to the Commission so that it may "consider the question afresh in light of the ambiguity we see." *Cajun*, 924 F.2d at 1136.

Although this dispute implicates a tangle of provisions within an intricate regulatory scheme, our resolution is straightforward: we find ambiguity where FERC found none. The Commission's interpretation of the Interconnection Agreement rests on a simple logical flaw.

From the outset, NextEra has claimed that it is entitled to CRRs for the Interim Project under section 36.11 of the CAISO tariff, which affords CRRs to the "Project Sponsor" of a "Merchant Transmission Facility." According to FERC, three provisions of the Interconnection Agreement, when read in concert, plainly render NextEra ineligible. Its argument goes like this:

1. Under the Interconnection Agreement, NextEra is entitled to a refund for Network Upgrades. Interconnection Agreement, Article 11.4.1.

2. The Interconnection Agreement provides that CRRs under the tariff are available to NextEra only as an alternative to a refund for Network Upgrades. Interconnection Agreement, Article 11.4.

3. NextEra agreed that the Interim Project is not a Network Upgrade (at least until the Interim Project becomes permanent). Interconnection Agreement, Appendix A, Section 9(b).

4. Thus, NextEra is ineligible for CRRs in connection with the Interim Project.

The flaw lies in step 2. The relevant provision, Article 11.4, states that NextEra may elect to "receive Congestion Revenue Rights as defined in and as available under the CAISO Tariff . . . , *in lieu of a refund of the cost of Network Upgrades*." Interconnection Agreement, Article 11.4 (emphasis added). As FERC sees it, the critical language is "in lieu of a refund of the cost of Network Upgrades," which it takes to mean that NextEra may receive CRRs *only* if it is eligible for a refund for a Network Upgrade. But the only thing Article 11.4 clearly forecloses is the receipt of both CRRs *and* a refund for Network

Upgrades. The clause beginning with "in lieu of" does not unambiguously mean that the lone avenue for receipt of CRRs is by way of a Network Upgrade.

This is, of course, NextEra's point: it thinks section 36.11 of the CAISO tariff offers another way to obtain CRRs for the Interim Project. Instead of addressing NextEra's argument, however, the Commission expressly declined to consider whether the company could avail itself of that section, declaring the question "inapposite" and "not relevant." *NextEra Desert Center II*, 2015 WL 7345798, at *4. For our purposes, whether NextEra actually qualifies under section 36.11 is beside the point, as the reason given by the Commission for denying NextEra's claim was its flawed interpretation of the tariff and Interconnection Agreement—an error that, under our cases, requires remand. *Ameren*, 330 F.3d at 498–99.

In contrast to FERC, Intervenors CAISO and Edison address section 36.11 head-on. As they explain, NextEra is patently unqualified for CRRs under that provision because it "never applied for . . . status" as a Project Sponsor "in accordance with Section 24" of the CAISO tariff. Intervenors' Brief at 23–24. Whatever the merits of that argument, it is a well-worn principle that "reviewing courts may affirm [an agency order] based only on reasoning set forth by the agency itself." *Philadelphia Gas Works v. FERC*, 989 F.2d 1246, 1250 (D.C. Cir. 1993) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). Hardly a fussy insistence that the agency show its work, this doctrine reflects the respect courts have for agency expertise. "Congress explicitly delegated to FERC broad powers over ratemaking, including the power to analyze the relevant contracts, and because the Commission has greater technical expertise in this field than does the Court, we accord deference to the Commission's interpretation[s]." *Lomak*

*Petroleum, Inc. v. FERC*, 206 F.3d 1193, 1198 (D.C. Cir. 2000) (citation and internal quotation marks omitted). As such, it is altogether appropriate that we decline to reach issues of tariff interpretation without first receiving the benefit of FERC's considered judgment.

The Commission acknowledges that our precedent requires remand when its decision rests on the erroneous conclusion that a tariff is unambiguous. It argues, however, that we may nonetheless deny the petition based on an alternative *Chevron* step 2 analysis that it claims lurks in its order denying rehearing. In support, it cites *Old Dominion*, in which we afforded "substantial deference to the Commission's interpretation" despite petitioners' claim that the agency found the relevant documents unambiguous, explaining that the Commission "considered policy concerns and extrinsic evidence . . . demonstrating it recognized [the documents] were ambiguous and exercised its discretion to resolve the ambiguities." 518 F.3d at 48–49. FERC's reliance on *Old Dominion* is misplaced. In an especially mystifying portion of its order, FERC observed that "even if the Commission found it necessary to look outside the four corners" of the Interconnection Agreement, its conclusion about the inapplicability of section 36.11 would remain unchanged, in light of "relevant portions of the CAISO tariff." *NextEra Desert Center II*, 2015 WL 7345798, at *6. Unlike in *Old Dominion*, however, FERC's cryptic discussion nowhere indicated that it understood the ambiguity we have identified. Rather, implicit in the Commission's reasoning is a continued reliance on its earlier, erroneous construction of the Interconnection Agreement. *See, e.g.*, *id.* ("[I]nterconnection customers have the choice of direct payments or CRRs for Network Upgrades. NextEra has agreed . . . that the Interim Project is not a Network Upgrade."). In other words, the

Commission's orders contain no apparent *Chevron* step 2 analysis to which we can defer.

Moreover, even if we were to consider FERC's alternative analysis, we would conclude that the Commission "fail[ed] to provide an intelligible explanation" for its decision, which "amounts to a failure to engage in reasoned decisionmaking." *FPL Energy Marcus Hook, L.P. v. FERC*, 430 F.3d 441, 448 (D.C. Cir. 2005). Specifically, the Commission leans heavily on two provisions of the tariff: Appendix DD and Appendix Y. The former provides, in relevant part, that "[f]or Network Upgrades, for which the Interconnection Customer did not receive repayment, the Interconnection Customer will be eligible to receive [CRRs] in accordance with the CAISO Tariff Section 36.11." CAISO Tariff, Appendix DD § 14.3.2.1. Appendix Y states that "[i]nstead of direct payments, the Interconnection Customer may elect to receive [CRRs] in accordance with the CAISO Tariff Section 36.11 associated with the Network Upgrades." CAISO Tariff, Appendix Y § 12.3.2.1. It follows, says FERC, that "interconnection customers have the choice of direct payments or CRRs for Network Upgrades." *NextEra Desert Center II*, 2015 WL 7345798, at *6. But neither provision, at least not by any reasoning spelled out in FERC's orders, forecloses the possibility that an entity in NextEra's position may receive CRRs under section 36.11 by some route *other* than a Network Upgrade—precisely the theory animating NextEra's claim.

## III.

We emphasize the narrowness of our holding, *i.e.*, that FERC overlooked an ambiguity in the Interconnection Agreement. Nothing in our opinion should be taken to prejudge the conclusion that FERC may reach on remand.

For the foregoing reasons, the petition for review is granted, and FERC's orders are remanded for further proceedings consistent with this opinion.

*So ordered.*