# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 14, 2021    Decided August 27, 2021

No. 20-1062

OKLAHOMA GAS AND ELECTRIC COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

CPV KEENAN II RENEWABLE ENERGY COMPANY, LLC, ET AL.,
INTERVENORS

Consolidated with 20-1101

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

*John Longstreth* and *Matthew J. Binette* argued the causes for petitioners Oklahoma Gas and Electric Company and Southwest Power Pool, Inc. With them on the joint briefs were *Donald A. Kaplan* and *Victoria M. Lauterbach*.

*Bruce A. Grabow*, *Jennifer Brough*, *Stuart A. Caplan*, *Matthew A. Fitzgerald*, *Noel Symons*, *Daniel E. Frank*, *Allison*

*E. Speaker*, and *Molly Suda* were on the joint briefs for intervenors CPV Keenan II Renewable Energy Company, LLC, et al. in support of petitioners. *William M. Keyser*, entered an appearance.

*Beth G. Pacella*, Deputy Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, Acting General Counsel, and *Robert H. Solomon*, Solicitor.

*Joseph W. Lowell* argued the cause for intervenors Xcel Energy Services Inc., et al. in support of respondent. With him on the joint brief were *Craig W. Silverstein*, *Stephen C. Pearson*, *Cynthia S. Bogorad*, *Amanda C. Drennen*, *Stacey L. Burbure*, *Phyllis G. Kimmel*, *Stephen M. Spina*, and *Timothy T. Mastrogiacomo*.

Before: TATEL, RAO, and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: This case concerns the authority of the Federal Energy Regulatory Commission ("FERC" or "Commission") to order a retroactive waiver of a billing requirement contained in a filed tariff. Several utilities that are managed by the Southwest Power Pool ("SPP"), a regional transmission operator, paid for upgrades to the transmission grid. The operative tariff required other utilities who benefitted from these upgrades to share the costs of the expanded network. The tariff, however, also required SPP to invoice the charges monthly and to make any adjustments within one year. The reimbursement calculation proved complicated, and it took SPP eight years to implement it, during which time SPP did not invoice for the upgrade charges.

The Commission initially granted SPP a waiver of the tariff's one-year time bar, but later determined it lacked the authority to waive this provision retroactively. FERC's revised determination meant the utilities that had made substantial outlays for upgrades were denied reimbursement for the eight years that had elapsed. SPP and Oklahoma Gas and Electric, one of the companies that sponsored upgrades and has been denied reimbursement, filed these consolidated petitions for review.

We deny the petitions. Once a tariff is filed, the Commission has no statutory authority to provide equitable exceptions or retroactive modifications to the tariff. SPP may impose only those charges contained in the filed rate. Because the one-year time bar for billing is part of the filed rate, FERC could not retroactively waive it, even to remedy the arguable windfall for users of the upgraded transmission networks. FERC therefore properly denied the waiver, and it was not arbitrary or capricious to order SPP to refund the retroactive charges it had collected under the invalidated waiver.

I.

SPP is a regional transmission organization servicing about 60,000 miles of transmission lines stretching from Arkansas to Wyoming and from Texas to North Dakota. SPP manages the transmission of electricity by collecting and distributing various charges and revenues among its stakeholders, which include both private and public utilities. SPP and its stakeholders operate under a tariff approved by FERC.

When a utility seeks to expand its generation capabilities, it may need transmission service beyond what the transmission grid currently can accommodate. To facilitate and encourage

investment in upgrades to the grid, SPP proposed a reimbursement mechanism to its tariff, which FERC accepted. *See Sw. Power Pool, Inc.*, 110 FERC ¶ 61,028 (2005). Attachment Z provided that a utility would initially fund upgrades needed to accommodate its expansion of service— that utility is the "upgrade sponsor." Other utilities that subsequently use the upgraded transmission facilities—the "upgrade users"—would pay a share of the upgrade costs. This reimbursement would continue until the upgrade sponsor was fully reimbursed. SPP later proposed, and FERC accepted, Attachment Z2, which clarified the standard for imposing upgrade charges. *See Sw. Power Pool, Inc.*, 123 FERC ¶ 61,208 (2008). Under Attachment Z2, an upgrade sponsor would receive credits from any upgrade users whose service could not be provided "but for" the upgrade. *See* Resp't Br. Add. 10–16 (Attachment Z2).

Later that year, Oklahoma Gas and Electric Company ("Oklahoma Gas"), an SPP stakeholder, wanted to develop wind generation in western Oklahoma. Although this region has strong winds, it lacked sufficient connection to the transmission grid to profitably move the energy to market. Oklahoma Gas decided to fund upgrades to the grid's transmission facilities in reliance on Attachment Z2's promise of credits from later users of the upgrades.

Meanwhile, the implementation of the upgrade crediting process proved to be complex. SPP obtained a vendor to develop special software necessary to calculate the upgrade charges, but it encountered delays and problems over the next several years. In the meantime, sponsors continued to fund network upgrades. SPP utilized a task force composed of its stakeholders to address the calculation of the upgrade charges. This stakeholder process kept the relevant parties apprised of SPP's efforts to implement the upgrade charges. SPP also

periodically provided "study reports" to the utilities, which contained notations that upgrade charges "may be required for the following Network Upgrades in accordance with Attachment Z2." J.A. 89. In 2015, SPP found a new software vendor and a year later, finally was able to calculate the upgrade charges for 2008 to 2016, which the parties refer to as the "historical period." At this point, the utilities using the upgrades had not been billed for their share of the upgrade costs.

By 2016, Oklahoma Gas had completed the upgrades to transmit the energy it generated from wind. Several other SPP stakeholders, including Xcel Energy Services, also used these transmission upgrades. Although Oklahoma Gas was entitled to compensation, it had not received any credits for its upgrade costs.

Out of what it said was an abundance of caution, SPP petitioned FERC for a waiver of a tariff provision governing the timing of invoices. Section I.7.1 of SPP's tariff provides that, "[w]ithin a reasonable time after the first day of each month, [SPP] shall submit an invoice to the Transmission Customer for the charges for all services furnished under the Tariff during the preceding month." Pet'rs Br. Add. 15 (hereinafter Tariff § I.7.1). Although SPP may later adjust the bills, adjustments must be made "within one year after rendition of the bill reflecting the actual data for such service." Tariff § I.7.1. SPP sought a waiver of Section I.7.1 to permit it to bill upgrade users for the upgrade charges incurred during the historical period, i.e., more than a year prior. Xcel, along with several other upgrade users, objected to the waiver request on the ground that Section I.7.1 is part of the filed rate, so the Commission cannot waive it.

The Commission initially granted SPP a waiver of Section I.7.1, applying the waiver both retroactively and prospectively. *See Sw. Power Pool, Inc.*, 156 FERC ¶ 61,020, slip decision (2016). Citing its four-part test for a waiver, FERC found that (1) SPP acted in good faith; (2) it sought a waiver of limited scope; (3) the waiver addressed a concrete problem; and (4) the waiver had no undesirable consequences. *See id*., slip decision at 21 ¶ 52. FERC denied the upgrade users' request for rehearing. *See Sw. Power Pool, Inc.*, 161 FERC ¶ 61,144 (2017). With the waiver in hand, SPP began to collect upgrade charges from the upgrade users for the historical period. SPP then distributed about $140 million in revenue credits to upgrade sponsors.

Xcel petitioned this court for review of the waiver orders. Before briefing was complete, we issued a decision in *Old Dominion Electric Cooperative v. FERC*, which reinforced that FERC has "no discretion to waive the operation of a filed rate or to retroactively change or adjust a rate for good cause or for any other equitable considerations." 892 F.3d 1223, 1230 (D.C. Cir. 2018). We then granted FERC's unopposed motion to remand so that FERC could consider the application of *Old Dominion* to this case in the first instance.

On remand, the Commission reversed course and denied the retroactive waiver of the one-year billing requirement in Section I.7.1. *See Sw. Power Pool, Inc.*, 166 FERC ¶ 61,160, slip decision (2019). FERC found that Section I.7.1's billing requirements are part of SPP's filed rate, and a waiver would impermissibly allow for retroactive billing of upgrade users in contravention of the filed rate. The Commission rejected SPP's argument that it had provided upgrade users with notice sufficient to satisfy the filed rate doctrine. The Commission also ordered SPP to refund the upgrade charges it had already collected from the upgrade users for the historical period. Two

commissioners filed concurring opinions to highlight the inequity of this situation, though they agreed that the Commission correctly denied the waiver and ordered the refund. These commissioners emphasized that SPP's failure to implement Attachment Z2 for eight years meant that sponsors of transmission upgrades, like Oklahoma Gas, had been deprived of revenue and the users of those upgrades had received a windfall. FERC denied rehearing. *See Sw. Power Pool, Inc.*, 170 FERC ¶ 61,125, slip decision (2020).

This court has jurisdiction to review SPP's and Oklahoma Gas's ("petitioners") consolidated petitions under 16 U.S.C. § 825*l*(b). We review FERC's orders to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## II.

The Commission concluded that the one-year billing requirement in Section I.7.1 applied to the upgrade charges and was part of the filed rate that could not be waived retroactively. The petitioners argue first that the tariff did not prohibit SPP from billing upgrade users more than one year after the upgrade charges accrued. Second, the petitioners maintain that, even if the time limit applied, FERC could provide a waiver because the utilities using the upgrades were on notice that they would be charged once the calculations were made. We take each argument in turn.

## A.

When reviewing the Commission's interpretation of a tariff, this court first "consider[s] *de novo* whether the relevant language unambiguously addresses the matter at issue," and if so, we apply that unambiguous meaning. *NextEra Desert Ctr.*

*Blythe, LLC v. FERC*, 852 F.3d 1118, 1121 (D.C. Cir. 2017) (cleaned up). "If, however, there is ambiguity, we defer to the Commission's construction so long as that construction is reasonable." *Id.* (cleaned up). We find the tariff provisions at issue unambiguously apply to the upgrade charges.

A tariff provision must be understood according to its plain meaning, which we draw from its text and context. *Cf. Ameren Servs. Co. v. FERC*, 330 F.3d 494, 499 (D.C. Cir. 2003). Section I.7.1 provides:

> Within a reasonable time after the first day of each month, [SPP] *shall* submit an invoice to the Transmission Customer for the charges for *all services* furnished under the Tariff during *the preceding month*.… Invoices may be issued using estimated data, to the extent actual data is not available by the fifth (5th) working day of the month following service. Adjustments reflecting the difference in billing between the estimated and actual data will be included on the next regular invoice, with such adjustment being due when that invoice is due. Any other corrections found to be necessary will be made on the next regular *monthly invoice*.
>
> Bills will be adjusted to correct for all provable meter errors. Billing adjustments for reasons other than (a) the replacement of estimated data with actual data for service provided, or (b) provable meter error, shall be limited to those corrections and adjustments found to be appropriate for such service within one year

> after rendition of the bill reflecting the actual data for such service.

Tariff § I.7.1 (emphases added).

Section I.7.1 unambiguously requires SPP to provide a monthly invoice to its stakeholders for all charges incurred during the preceding month. As the petitioners conceded, upgrade charges are "charges for [a] service[] furnished under the Tariff." Tariff § I.7.1; *see also* Oral Arg. Tr. 14:18–22, 22:12–16. SPP was thus obligated to bill for them monthly.

Attachment Z2, which sets out the arrangement for sharing upgrade costs, is not to the contrary. This provision was an addition to the tariff that included Section I.7.1, but the addition included no language overriding Section I.7.1's billing requirements. In fact, Attachment Z2 says nothing at all about the timing of billing for upgrade charges. Based on the plain language of the tariff, we agree with the Commission that Section I.7.1 applied to the upgrade charges during the historical period.

The petitioners provide several reasons why Section I.7.1 does not apply to the upgrade charges. They first argue that Section I.7.1 has no application because that provision concerns billing "adjustments," whereas the upgrade charges concern the initial settlement of those charges. To be sure, the second paragraph of Section I.7.1 focuses on billing adjustments, generally prohibiting them one year after the initial bill. Yet the petitioners ignore the first paragraph's requirement that SPP bill for all charges on a monthly basis, which SPP failed to do for the upgrade charges. That SPP did not calculate the upgrade charges until recently does not excuse its failure to comply with Section I.7.1's monthly billing requirement. As the Commission explained, Section I.7.1

contains "no exception for processes or services that may take longer than one year to implement." 170 FERC ¶ 61,125, slip decision at 11 ¶ 24. Moreover, it would permit an end run around the monthly billing requirement and the one-year prohibition on adjustments if SPP could avoid both those obligations by never providing an initial bill.[1]

Next, the petitioners rely on Section I.7.1's provisions regarding the use of estimated data until actual data is available. They reason that Section I.7.1 did not apply until the actual data could be calculated, so no monthly bill was required while the necessary software was being developed. The petitioners cannot benefit from this provision for a simple reason: SPP never provided estimated data on the upgrade charges. The first paragraph of Section I.7.1 provides that SPP may use estimated data on the monthly invoice "to the extent actual data is not available by the fifth (5th) working day of the month following service." Tariff § I.7.1. The petitioners suggest the study reports may be used as the relevant "estimated data," but the notations in those reports indicate only that "[c]redits may be required for the following Network Upgrades in accordance with Attachment Z2." *See, e.g.*, J.A. 89. This general reference to upgrade charges hardly constitutes estimated data for those charges, much less estimated charges provided on a monthly invoice. Because SPP

---

[1] The petitioners also argue that SPP satisfied Section I.7.1 by providing a bill for the upgrade charges within a "reasonable time." This overlooks that Section I.7.1 requires SPP to bill its stakeholders "[w]ithin a reasonable time after the first day of each month." Tariff § I.7.1. In context, the amount of "reasonable time" is cabined by a monthly limitation. SPP's billing for upgrade charges years after they were incurred is plainly not "a reasonable time after the first day of each month." Tariff § I.7.1.

never provided estimated data, it cannot now bill for the actual charges beyond the one-year limitation period.[2]

The petitioners also maintain that FERC's interpretation fails to give effect to Attachment Z2. Whenever possible, the provisions of a tariff should be interpreted harmoniously "so as to give effect to all of its provisions and to avoid rendering any provision meaningless." *Pub. Serv. Co. of N.H. v. N.H. Elec. Coop.*, 86 FERC ¶ 61,174, 61,598 (1999). Under petitioners' interpretation, however, SPP can collect the upgrade charges set forth in Attachment Z2 regardless of the billing requirements of Section I.7.1. By contrast, the Commission's interpretation gives effect to both tariff provisions, allowing SPP to collect the upgrade charges set forth in Attachment Z2, but only by following the billing requirements of Section I.7.1.

The petitioners finally suggest that FERC incorrectly elevated the "non-rate" terms about billing over the rates specified in Attachment Z2. Because utilities relied on that rate when sponsoring transmission upgrades, the rate should be implemented with retroactive billing, irrespective of the timing requirements in Section I.7.1. The Commission reasonably concluded, however, that rate certainty cut the other way because the enforcement of Section I.7.1's requirements "assures customers that a utility cannot assess them new

---

[2] The petitioners contend that FERC confused estimated charges with estimated data, the latter of which is all that Section I.7.1 requires. We disagree. Although Section I.7.1 provides that "[i]nvoices may be issued using estimated data," those invoices must include "the charges for all services furnished" that month. Tariff § I.7.1. Accordingly, estimated data may be used to calculate the charges on the monthly invoices, but estimated charges based on that data are still required on the invoices. Regardless, SPP provided neither estimated data nor estimated charges to the upgrade users.

charges after the one-year timeframe for doing so lapses." 170 FERC ¶ 61,125, slip decision at 12 ¶ 25.

A plain reading of Section I.7.1 establishes that SPP could not bill for upgrade charges more than one year after the charges were incurred by the upgrade users.

B.

Because Section I.7.1's billing requirements applied to the upgrade charges, SPP needed a waiver from FERC to impose those charges retroactively. FERC denied the waiver, concluding a waiver would effectively result in a retroactive change in the rates and therefore run afoul of the filed rate. FERC's decision was reasonable and consistent with this court's articulation of the filed rate doctrine and the statutory limits on FERC's authority to modify rates retroactively.

The Commission must ensure regulated entities charge "just and reasonable" rates. 16 U.S.C. § 824*d*(a). As incorporated into the Federal Power Act, regulated entities are required to file with FERC "schedules showing all rates and charges … and the classifications, practices, and regulations affecting such rates and charges." Public Utility Holding Company Act of 1935, ch. 687, § 205, 49 Stat. 838, 851 (codified as amended at 16 U.S.C. § 824*d*(c)). Once filed, "no change shall be made … in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after sixty days' notice to the Commission and to the public" in another filing with FERC. 16 U.S.C. § 824*d*(d). As the statutory terms make clear, the filed rate "is not limited to 'rates' *per se*," but also extends to matters "directly affect[ing] … rates." *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966–67 (1986). It follows that

FERC "has no authority under the Act to allow retroactive change in the [filed] rates." *Old Dominion*, 892 F.3d at 1226.

These statutory provisions "mandating the open and transparent filing of rates and broadly proscribing their retroactive adjustment are known collectively as the 'filed rate doctrine.'" *Id.* at 1226–27; *see also Towns of Concord v. FERC*, 955 F.2d 67, 70–72 (D.C. Cir. 1992) (detailing the origins of the filed rate doctrine and its justifications). The so-called "doctrine" is shorthand for the interconnected statutory requirements that bind regulated entities to charge only the rates filed with FERC and to change their rates only prospectively. When it applies, the filed rate doctrine is "a nearly impenetrable shield" and does not yield, "no matter how compelling the equities." *Old Dominion*, 892 F.3d at 1230.

In this case, SPP failed to comply with Section I.7.1's billing requirements for the upgrade charges, and it now seeks a retroactive waiver of those requirements, particularly its one-year prohibition on billing adjustments. As FERC found, however, Section I.7.1 is part of the filed rate. *See* 166 FERC ¶ 61,160, slip decision at 27 ¶ 50. If the Commission waived Section I.7.1's time bar, SPP would be permitted to charge something other than the filed rate. Accordingly, the Commission did not act arbitrarily or capriciously when it denied SPP a retroactive waiver of Section I.7.1.

The petitioners do not contest Section I.7.1 is part of the filed rate. They instead reiterate that FERC should not elevate a "non-rate" term like Section I.7.1, which governs the timing of invoices, over a rate term like Attachment Z2, which directly imposes charges. The filed rate requirements are not so confined. *See Nantahala Power & Light*, 476 U.S. at 966–67. The Federal Power Act prohibits changes, not just to a rate, but also to "any such rate, charge, classification, or service, or in

any rule, regulation, or contract relating thereto." 16 U.S.C. § 824*d*(d).

Non-rate terms within the tariff may not be changed retroactively, and those include billing limitations.[3] For example, the First Circuit has held that a tariff provision that "mak[es] charges incontestable if not challenged within one year" is "part and parcel of the rate schedule for purposes of the filed rate doctrine." *Boston Edison Co. v. FERC*, 856 F.2d 361, 368, 371 (1st Cir. 1988). FERC has likewise found that billing limitations are part of the filed rate. *See Seminole Elec. Coop., Inc. v. Fla. Power & Light Co.*, 139 FERC ¶ 61,254, 62,873 (2012) (finding "the 24-month limitation on retroactive billing in [the tariff] is itself the filed rate"); *N.Y. Indep. Sys. Operator, Inc.*, 128 FERC ¶ 61,086, 61,464 (2009) (finding a tariff provision prohibiting corrections to finalized invoices is part of the filed rate). In this case, Section I.7.1's billing requirements, although non-rate terms, are part of the filed rate. The statute provides no grounds for distinguishing rate and non-rate terms, but rather binds parties to the terms in the filed tariff.

The petitioners next suggest they should benefit from an "exception" to the filed rate doctrine because SPP gave notice to the upgrade users that they would be responsible for upgrade

---

[3] We note that FERC has rejected a distinction between rate and non-rate terms in its recent proposed guidance on waivers. *See Proposed Policy Statement on Waiver of Tariff Requirements*, 171 FERC ¶ 61,156, 62,265 (2020) ("[T]here is no basis for the Commission to conclude that those doctrines apply any differently to non-rate terms and conditions than to rates."); *accord Sunflower Elec. Power Corp.*, 173 FERC ¶ 61,054, 61,340 (2020) (Danly, dissenting) ("Any conclusion that a distinction can be drawn regarding the applicability of these doctrines to rate versus non-rate terms is questionable at best.").

charges once properly calculated. "[T]he filed rate doctrine simply does not extend to cases in which buyers are on adequate notice that resolution of some specific issue may cause a later adjustment to the rate being collected at the time of service." *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10, 22 (D.C. Cir. 2014) (cleaned up).

This purported exception, however, does not recognize any sort of notice given by one regulated entity to another. Rather, notice may satisfy the filed rate doctrine when entities have formal notice of the rates, as recognized by the two well-established circumstances in which the court has found adequate notice. First, the filed rate requirements are satisfied when a tariff has a formula for calculating a rate, which states clearly that charges will depend on application of the formula. *Old Dominion*, 892 F.3d at 1231–32; *see also NSTAR Elec. & Gas Corp. v. FERC*, 481 F.3d 794, 801 (D.C. Cir. 2007) (concluding that a FERC *rule* provided notice to the market participants). Second, the filed rate requirements are not violated when a court invalidates a filed rate as unlawful, and FERC must make retroactive changes to the rates. *W. Deptford Energy*, 766 F.3d at 22. In both instances the regulated parties receive formal notice—either through a FERC proceeding or through the courts. Understood in this light, these are not exceptions so much as further elaborations of the boundaries of the statutory requirements that comprise the filed rate doctrine.

Accordingly, we have generally declined to find notice outside of these "two limited circumstances." *Old Dominion*, 892 F.3d at 1227. The petitioners argue that SPP provided notice of the upgrade charges in three sources: Attachment Z2, the stakeholder process in which some stakeholders participated, and the notations in SPP's study reports. None of these sources provides the type of formal notice required to satisfy the filed rate doctrine.

First, although Attachment Z2 was an addition to the filed rate that set forth the possibility of upgrade charges, it did not provide notice that upgrade users could be charged outside of Section I.7.1's billing requirements. To constitute sufficient notice, "the relevant audience [must be] on notice at the outset that the rates" are "subject to later revision." *NSTAR*, 481 F.3d at 801 (cleaned up). Attachment Z2 made no mention of overriding or changing the timing of billing in Section I.7.1, nor did it suggest that difficulties in calculation could result in charges outside the normal billing period. *Cf. Old Dominion*, 892 F.3d at 1231 (concluding that a tariff provision did not provide sufficient notice because it failed to forewarn that "some specific issue may cause a later adjustment to the rate being collected at the time of service") (cleaned up). Attachment Z2 failed to provide the requisite notice that upgrade charges could occur outside Section I.7.1's billing requirements.

The other two alleged sources of notice—the stakeholder process and SPP's study reports—cannot provide sufficient notice. Whatever information they might have provided, they were not filed with the Commission, and a filing "is required for all rate changes." *Id*. at 1232 (finding a website statement regarding possible retroactive charges insufficient because it was not filed with FERC).

We recognize that SPP apprised stakeholders of ongoing efforts to calculate the upgrade charges and the study reports noted that "[c]redits may be required" for upgrades "in accordance with Attachment Z2"—actions that may have notified stakeholders that SPP intended to bill for shared upgrade costs in the future. J.A. 89. Nonetheless, the type of notice that matters for the filed rate doctrine is formal notice, usually notice filed with FERC. Nothing in the filed tariff

indicated that upgrade charges could be billed outside of Section I.7.1's limitations.

FERC was therefore prohibited from waiving Section I.7.1 for the historical period at issue.[4] The Commission "may not disinter the past merely because experience has belied projections, whether the advantage went to customers or the utility; bygones are bygones." *Associated Gas Distribs. v. FERC*, 898 F.2d 809, 810 (D.C. Cir. 1990) (Williams, J., concurring in the denial of rehearing and rehearing en banc). The filed rate requirement is stringent and admits of no equitable adjustments by the Commission or this court.

## III.

We next consider whether FERC acted arbitrarily or capriciously by ordering a refund of the upgrade charges SPP collected under FERC's initial, but mistaken, waiver. When reviewing the Commission's exercise of its remedial powers, we apply the arbitrary and capricious standard, but the "scope of judicial review is particularly narrow." *See La. Pub. Serv.*

---

[4] The petitioners highlight that FERC has sometimes waived time bars. That is true, but the decisions they cite failed to consider the requirements of the filed rate doctrine. *See, e.g.*, *Sw. Power Pool, Inc.*, 153 FERC ¶ 61,180 (2015). Because FERC correctly applied the filed rate doctrine here, prior waivers that failed to consider these requirements are not germane. The Commission's proposed policy statement recognizes that some of its earlier decisions "drifted beyond the limits imposed by the filed rate doctrine and the rule against retroactive ratemaking," and the Commission has proposed guidance to avoid such drifting in the future. *See Proposed Policy Statement on Waiver of Tariff Requirements*, 171 FERC ¶ 62,264; *see also id.* ¶ 62,266 & nn.36–37.

*Comm'n v. FERC*, 772 F.3d 1297, 1302 (D.C. Cir. 2014) (cleaned up).

The Commission may craft a variety of remedies under Section 309 of the Federal Power Act.[5] The filed rate doctrine, however, limits that remedial authority. *See Verso Corp. v. FERC*, 898 F.3d 1, 10 (D.C. Cir. 2018); *Pub. Utils. Comm'n of Cal. v. FERC*, 988 F.2d 154, 168 n.12 (D.C. Cir. 1993) (explaining that if FERC's actions "violated the filed rate doctrine or the rule against retroactive ratemaking, we would not then invoke the Commission's assessment of the equities to overcome those violations"). Once FERC determined that its initial waiver of Section I.7.1 ran afoul of the filed rate, the natural consequence was to order a refund of charges billed for the historical period. FERC stated it would be "inappropriate" to exercise equitable authority here, because its initial waiver violated the filed rate doctrine. 166 FERC ¶ 61,160, slip decision at 30 ¶ 57. Given FERC's broad remedial discretion, that decision was not arbitrary and capricious.

The petitioners also argue that ordering the refund defies the cost causation principle, under which "all approved rates [must] reflect to some degree the costs actually caused by the customer who must pay them." *Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1368 (D.C. Cir. 2004) (cleaned up). When "a utility benefits from the costs of new facilities," the cost causation principle dictates that the utility must pay for that benefit because it has "caused a part of those costs to be incurred, as without the expectation of its contributions the facilities might not have been built, or might

---

[5] Section 309 provides that FERC "shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter." 16 U.S.C. § 825*h*.

have been delayed." *Ill. Com. Comm'n v. FERC*, 576 F.3d 470, 476 (7th Cir. 2009) (cleaned up). The petitioners argue the stakeholders should pay for the upgrades they have used.

Attachment Z2 implements the cost causation principle by requiring stakeholders who benefit from upgrades to pay for a share of the upgrades. The cost causation principle, however, concerns FERC's approval of a rate as just and reasonable. *K N Energy, Inc. v. FERC*, 968 F.2d 1295, 1300 (D.C. Cir. 1992) (explaining the cost causation principle "add[s] flesh to the[] bare statutory bones" of the "just and reasonable" standard). The petitioners have provided no authority, nor have we found any, to suggest that a filed rate, which FERC found to be just and reasonable, can be waived because FERC later determines that its application violates the cost causation principle. Cost causation is a principle for ratemaking, not an abstract principle that can trump a filed rate.

The petitioners wish FERC would have let things lie by permitting SPP to keep the upgrade charges it had already collected retroactively and distributed to upgrade sponsors like Oklahoma Gas. We recognize Oklahoma Gas and other sponsors of transmission upgrades relied on Attachment Z2, which provided that other utilities using and benefitting from the upgrades would share the costs of the upgrades. The upgrade sponsors cannot recover any costs for most of the historical period in which SPP was figuring out how to calculate the charges. Meanwhile, users who benefitted from the upgrades received a free pass during the historical period. Whatever the equities of this situation, the Commission's decision to order the refund was a reasonable exercise of its remedial authority in light of its determination that the initial waiver violated the filed rate requirements and the upgrade charges would not have been collected but for that waiver. The outcome here should serve as a cautionary reminder to parties

that, if circumstances change, they should take action at the outset, such as by seeking to amend the tariff or requesting *prospective* waivers from FERC to act in contravention of a filed rate.

We hold that FERC reasonably exercised its remedial authority to order SPP to refund the retroactive upgrade charges.

\* \* \*

The filed rate requirements are a formidable obstacle for entities regulated by FERC that wish to obtain retroactive relief from the terms of their tariff. The Commission correctly determined that Section I.7.1's time bar was part of the filed rate. Therefore, the Commission lacked authority to provide a retroactive waiver and ordering a refund was a reasonable remedy. For the foregoing reasons, we deny the petitions.

*So ordered.*