# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 17, 2025      Decided January 13, 2026

No. 24-1353

MARYLAND OFFICE OF PEOPLE'S COUNSEL, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

PJM INTERCONNECTION, L.L.C., ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Jeffrey A. Schwarz* argued the cause for petitioners. With him on the briefs were *David S. Lapp*, *William F. Fields*, *Scott H. Strauss*, *Peter J. Hopkins*, *Lauren L. Springett*, *John McCaffrey*, *Timothy G. McCormick*, *Christian F. Tucker*, *Robert A. Weishaar, Jr.*, *Adrienne E. Clair*, *Gerit F. Hull*, *Thomas L. Rudebusch*, *Bhaveeta K. Mody*, *Miles H. Mitchell*, and *Ransom E. Ted Davis.*

*Jason T. Perkins*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on

the brief were *David L. Morenoff*, Acting General Counsel, and *Robert H. Solomon*, Solicitor.

*Paul W. Hughes* argued the cause for intervenors in support of respondent. With him on the brief were *Steffen N. Johnson*, *Nicholas M. Gladd*, *Kelsey C. Catina*, *David G. Tewksbury*, *Andrew A. Lyons-Berg*, *Connor J. Suozzo*, *Ryan J. Collins*, *Christopher C. O'Hara*, *Zachary C. Schauf*, *Zachary B. Cohen*, and *Arjun R. Ramamurti*. *Vivian W. Chum* entered an appearance.

Before: HENDERSON, PILLARD and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: PJM Interconnection, LLC (PJM) asked the Federal Energy Regulatory Commission (FERC) for permission to amend its tariff under section 205 of the Federal Power Act (FPA) before it finalized a capacity auction that was set to saddle consumers with hundreds of millions of dollars in inflated electricity prices. FERC approved PJM's request, but the United States Court of Appeals for the Third Circuit vacated that decision, reasoning that the tariff amendment violated the filed-rate doctrine. *PJM Power Providers Grp. v. FERC*, 96 F.4th 390, 399–402 (3d Cir. 2024). FERC complied with the Third Circuit's mandate and directed PJM to complete the auction using the unamended version of its tariff. PJM obliged and, as expected, rates soared. State agencies, PJM customers and private entities representing the customers' interests filed a complaint under section 206 of the FPA, asking FERC to modify the auction result. FERC declined, reasoning that the Third Circuit's decision tied its hands. Unsatisfied with

FERC's explanation, the complainants have petitioned this Court for review.

There may have been a sound basis for FERC to deny relief. But the only reason it articulated—that the Third Circuit resolved the matter—was anything but sound. The Third Circuit held that the filed-rate doctrine foreclosed FERC's efforts to modify PJM's rate-setting process under section 205 of the FPA. But it never addressed whether the auction result is subject to revision under section 206. FERC's conclusion to the contrary was erroneous. We therefore grant the petition for review.

## I. Legal and Factual Background

The filed-rate doctrine prohibits regulated entities from charging rates "other than those properly filed with the appropriate federal regulatory authority," *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981), and permits those rates to be changed "only prospectively," *Okla. Gas & Elec. Co. v. FERC*, 11 F.4th 821, 829 (D.C. Cir. 2021).[1] The doctrine has long provided "necessary predictability" in our Nation's electricity

---

[1] Some of our decisions have attributed the prohibition on retroactive rate modifications to the filed-rate doctrine's "corollary," the rule against retroactive ratemaking. *OXY USA, Inc. v. FERC*, 64 F.3d 679, 699 (D.C. Cir. 1995); *see Associated Gas Distribs. v. FERC*, 898 F.2d 809, 810 (D.C. Cir. 1990) (Williams, J., concurring in denial of rehearing and rehearing en banc) ("We have not always clearly distinguished between the filed rate doctrine and the retroactive ratemaking doctrine, doubtless because they often overlap.").

markets. *Elec. Dist. No. 1 v. FERC*, 774 F.2d 490, 493 (D.C. Cir. 1985).

The "contours" of the filed-rate doctrine have historically been drawn by the judiciary. *Ark. La. Gas Co.*, 453 U.S. at 599 (Stevens, J., dissenting); *see generally* Gustavus H. Robinson, *The Filed Rate in Public Utility Law: A Study in Mechanical Jurisprudence*, 77 U. Pa. L. Rev. 213 (1928). But the doctrine has always been "statutorily grounded." *Columbia Gas Transmission Corp. v. FERC*, 895 F.2d 791, 795 (D.C. Cir. 1990). The earliest decisions articulating the filed-rate doctrine rested on interpretations of the Interstate Commerce Act of 1887. *See, e.g.*, *Pa. R.R. Co. v. Int'l Coal Mining Co.*, 230 U.S. 184, 196–97 (1913). Over time, the doctrine found footing in other statutes and expanded "across the spectrum of regulated utilities." *Ark. La. Gas Co.*, 453 U.S. at 577. In the context of FERC's regulation of electricity markets, the filed-rate doctrine primarily "rests on two provisions" of the FPA: section 205 and section 206, 16 U.S.C. §§ 824d, 824e. *Towns of Concord, Norwood & Wellesley v. FERC*, 955 F.2d 67, 71–72 (D.C. Cir. 1992).

Section 205 and section 206 are "related but distinct." *FirstEnergy Serv. Co. v. FERC*, 758 F.3d 346, 348 (D.C. Cir. 2014). Both require that the rates charged by utilities subject to FERC's jurisdiction be just and reasonable. *Kan. Gas & Elec. Co. v. FERC*, 758 F.2d 713, 716 (D.C. Cir. 1985). But they enforce that mandate differently. Section 205 requires regulated entities to file their rates with FERC and thus primarily involves "newly filed rates." *Papago Tribal Util. Auth. v. FERC*, 723 F.2d 950, 956 (D.C. Cir. 1983). Section 206, on the other hand, focuses on "existing rates," empowering FERC to modify those that it deems unjust or unreasonable. *FirstEnergy Serv. Co.*, 758 F.3d at 348. All told, FERC's role under section 206 is "more active" than the

"essentially passive and reactive" role contemplated by section 205. *City of Winnfield v. FERC*, 744 F.2d 871, 876 (D.C. Cir. 1984).

FERC oversees Regional Transmission Organizations (RTOs), which "are independent organizations that manage the transmission of electricity over the electric grid and ensure electricity is reliably available for consumers." *Advanced Energy Mgmt. All. v. FERC*, 860 F.3d 656, 659 (D.C. Cir. 2017) (per curiam). RTOs fulfill their responsibilities by carrying out "several functions." *Citadel FNGE Ltd. v. FERC*, 77 F.4th 842, 848 (D.C. Cir. 2023). One such function is procuring capacity, which "is not electricity itself but the ability to produce it when necessary." *Conn. Dep't of Pub. Util. Control v. FERC*, 569 F.3d 477, 479 (D.C. Cir. 2009).

PJM is an RTO that manages the transmission of electricity in "all or parts of thirteen Mid-Atlantic and Midwestern states and the District of Columbia." *Advanced Energy Mgmt. All.*, 860 F.3d at 659.[2] It procures capacity by conducting auctions "years in advance of when the capacity offered at the auction will be needed." *N.J. Bd. of Pub. Utils. v. FERC*, 744 F.3d 74, 84 (3d Cir. 2014). The results of PJM's capacity auctions have a direct effect on the prices that downstream consumers pay for electricity. *See Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 159 (2016). In other words, when PJM pays more for capacity, consumers pay more for electricity.

PJM's Open Access Transmission Tariff (Tariff) "provides a detailed roadmap" of how PJM's capacity auctions must be conducted. *PJM Power Providers Grp.*, 96 F.4th at

---

[2] PJM takes its name from Pennsylvania, New Jersey and Maryland: "the first three states in which it operated." *Long Island Power Auth. v. FERC*, 27 F.4th 705, 709 (D.C. Cir. 2022).

395. The Tariff requires PJM to calculate and publish various "parameters, or inputs," it intends to use in each auction. *Id.* One of those parameters is the Locational Delivery Area Reliability Requirement (LDA Reliability Requirement), which represents "the amount of capacity that must be produced to meet peak demand" in a particular PJM zone. *Del. Div. of the Pub. Advoc. v. FERC*, 3 F.4th 461, 463–64 (D.C. Cir. 2021).

After PJM publishes the auction parameters, capacity suppliers review that information and decide whether to submit a bid. *PJM Power Providers Grp.*, 96 F.4th at 395. At the conclusion of the bidding period, PJM runs an algorithm that determines which bids to accept. *Id.* PJM begins by accepting the lowest-priced bid and repeats that process until it secures sufficient capacity. *Id.* The price of the final accepted bid constitutes the clearing price, and all suppliers whose bids are accepted are paid that price. *Hughes*, 578 U.S. at 156.[3] If PJM fails to secure sufficient capacity and there is no natural clearing price, the auction clears at a predetermined price cap.

This case involves PJM's 2024/2025 capacity auction. That auction "proceeded smoothly at first." *PJM Power Providers Grp.*, 96 F.4th at 396. More recent developments have been anything but smooth. In August 2022, PJM posted parameters for the 2024/2025 auction and gave suppliers more than three months to decide whether to bid. Shortly after bidding closed, PJM noticed an issue pertaining to the Delmarva Power & Light Company South Zone (DPL South Zone), a subsection of the DPL Pricing Zone that consists of

---

[3] *See Hughes*, 578 U.S. at 156 n.1 ("[I]f four power plants bid to sell capacity at, respectively, $10/unit, $20/unit, $30/unit, and $40/unit, and the first three plants provide enough capacity to satisfy projected demand, PJM will purchase capacity only from those three plants, each of which will receive $30/unit, the clearing price.").

parts of Delaware, Maryland and Virginia. The DPL South Zone's LDA Reliability Requirement rested on PJM's belief that certain suppliers would participate in the auction, but that prediction proved to be wrong. As a result, the LDA Reliability Requirement reflected a need for substantially more capacity than the DPL South Zone in fact needed.[4] If left unaddressed, this mismatch would inflate the clearing price and likely lead to more than $100 million in excess capacity charges.

Seeking to avoid an anomalous (and expensive) outcome, PJM requested relief under section 205 and section 206 of the FPA. Both filings sought FERC's approval of a tariff amendment that would authorize PJM to modify the LDA Reliability Requirement before finalizing the auction. In February 2023, FERC approved PJM's request to amend its Tariff under section 205 and denied its section 206 filing as moot. PJM quickly amended its Tariff, revised the LDA Reliability Requirement and completed the auction. Capacity suppliers that would have benefitted from a higher clearing price challenged FERC's approval of PJM's tariff amendment. The Third Circuit granted their petition, reasoning that the tariff amendment operated retroactively in violation of the filed-rate doctrine. *PJM Power Providers Grp.*, 96 F.4th at 401.

The Third Circuit started with the premise that the filed-rate doctrine permits only prospective rate changes. *Id.* at 394. It then looked to *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and subsequent decisions applying it, to establish

---

[4] Specifically, PJM had predicted that certain "large power plants and solar facilities" would participate in the auction. *PJM Power Providers Grp.*, 96 F.4th at 396 n.3. PJM considered these to be "relatively unreliable sources of power," so it factored in a need for a "correspondingly large amount" of backup capacity. *Id.* When those suppliers declined to participate in the auction, the additional backup capacity became unnecessary. *See id.*

a definition of retroactivity. *PJM Power Providers Grp.*, 96 F.4th at 398. Relying on those cases, it reasoned that an action is retroactive if it "alter[s] the legal consequence[s] attached to a past action," *id.* at 399, and defined the "relevant inquiry" as whether PJM's "Tariff Amendment alter[ed] the legal consequences attached to past actions," *id.* at 400. The Third Circuit held that it was retroactive to change the LDA Reliability Requirement mid-auction because the Tariff required that parameter to be "calculate[d]" and "post[ed]" "prior to conducting the Auction and then use[d] . . . in the Auction." *Id.* at 399. The "legal consequence" that the Third Circuit held FERC altered was the Tariff's requirement "to use [the LDA Reliability Requirement] in the Auction." *Id.* at 400. Thus, in the Third Circuit's view, the tariff amendment was "retroactive, and FERC violated the filed rate doctrine by approving it." *Id.* at 401. The Third Circuit therefore vacated the portion of FERC's orders permitting the tariff amendment to apply to PJM's 2024/2025 auction. *Id.* at 402.

Shortly after the Third Circuit issued its mandate, PJM petitioned FERC for confirmation that it should re-run the auction using the initial LDA Reliability Requirement. A group consisting of agencies in the Maryland and Delaware state governments, PJM customers and private entities representing the customers' interests (collectively, the DPL Customers) protested the petition. FERC sided with PJM and instructed it to re-run the auction as if its Tariff had not been amended. PJM re-ran the auction and was unable to secure enough capacity for the auction to clear naturally, causing it to clear at the predetermined price cap. Compared to the earlier iteration of the auction, PJM spent an additional $182.8 million to procure just 1.9 per cent more capacity.

While the DPL Customers were protesting PJM's petition, they also filed a complaint under section 206 of the FPA

(Complaint). The Complaint asked FERC to declare the re-run "auction results . . . unjust and unreasonable" and "replace them" with the "efficient market outcome" that prevailed at the original auction. App. at 3. FERC denied the Complaint, reasoning that it could not reach an "outcome that would be inconsistent with the Third Circuit's ruling." *PJM Load Parties v. PJM Interconnection, LLC*, Order Denying Complaint, 188 FERC ¶ 61,020, P 21 (2024). FERC elaborated on its views in a subsequent order denying rehearing, contending that it was powerless to grant relief that would fail "the Third Circuit's test for retroactivity" and "lead to an outcome inconsistent with the Third Circuit's ruling." *PJM Load Parties v. PJM Interconnection, LLC*, Order Addressing Arguments Raised on Rehearing, 189 FERC ¶ 61,199, P 12 (2024). Dissatisfied with FERC's denial of their Complaint, the DPL Customers petitioned this Court for review. PJM has since intervened in support of FERC, as have several capacity suppliers and their trade association.

## II. Analysis

We have jurisdiction under 16 U.S.C. § 825*l*(b). We ordinarily review FERC's orders under the Administrative Procedure Act's arbitrary and capricious standard. *See Mo. River Energy Servs. v. FERC*, 918 F.3d 954, 957 (D.C. Cir. 2019). But FERC's denial of the Complaint rested entirely on its interpretation of the Third Circuit's decision. And we "give[] no deference to an agency's interpretation of judicial precedent." *SFPP, L.P. v. FERC*, 967 F.3d 788, 795 (D.C. Cir. 2020) (per curiam). "We therefore are not limited to, and do not employ, the deferential arbitrary and capricious standard." *City of Ukiah v. FERC*, 729 F.2d 793, 796 (D.C. Cir. 1984). Instead, our review is de novo. *See Ass'n of Civilian Technicians v. FLRA*, 353 F.3d 46, 50 (D.C. Cir. 2004).

The Third Circuit was presented with a discrete legal question: whether FERC acted lawfully when it used its section 205 authority to modify the process PJM uses to procure capacity. It answered that question in the negative, reasoning that FERC's orders approving PJM's tariff amendment were retroactive as applied to the 2024/2025 auction and therefore violated the filed-rate doctrine. *PJM Power Providers Grp.*, 96 F.4th at 402. The Third Circuit was simply not presented with, nor did it answer, the question of whether a subsequent use of FERC's section 206 authority to modify the resulting auction price would be retroactive, much less impermissible.

We recognize that courts sometimes answer questions implicitly. But the "important differences" between section 205 and section 206 make it impossible to predict how the Third Circuit would have resolved a challenge to FERC's modification of PJM's auction-set capacity price under section 206. *Ala. Power Co. v. FERC*, 993 F.2d 1557, 1571 (D.C. Cir. 1993). Indeed, when the capacity suppliers argued that the tariff amendment was impermissibly retroactive "because it allowed PJM to disregard the Auction results," the Third Circuit expressly declined to take up that argument. *PJM Power Providers Grp.*, 96 F.4th at 401 n.8. And even if the Third Circuit had telegraphed how it would resolve a section 206 challenge to the auction results, FERC would not be bound by its telegraph. Federal courts are powerless to answer "hypothetical questions." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). And when the Third Circuit issued its decision, the DPL Customers had not yet filed their Complaint. The current controversy had simply not yet materialized.

Because the Third Circuit did not answer the different legal questions raised by the DPL Customers' Complaint—and could not have done so even if it had wanted to—we have little difficulty concluding that the Third Circuit's decision did not

mandate the Complaint's denial. FERC resists this conclusion, but its arguments lack force.

FERC contends that, under the Third Circuit's reasoning, any modification to PJM's auction-set capacity price would be retroactive. Even were that true, "agencies rely on . . . dictum at their own risk." *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 514 (2004) (Kennedy, J., dissenting). And they are not bound by their hypotheses about how a court might have ruled on questions that were never presented or answered.

More fundamentally, FERC's argument wrongly assumes that the filed-rate doctrine categorically bars all backward-looking rate modifications. No doubt, the filed-rate doctrine generally forbids the retroactive modification of rates. *Okla. Gas & Elec. Co.*, 11 F.4th at 829. But that is only a default rule because the doctrine does not operate independently of the "interconnected statutory" provisions that undergird it. *Id.*; *see E. Tex. Elec. Coop., Inc. v. FERC*, 90 F.4th 579, 589 n.7 (D.C. Cir. 2024). If a filed rate is "changed in [a] manner provided by the [Federal Power] Act," the earlier rate is no longer "binding upon the seller and the purchaser." *Nw. Pub. Serv. Co. v. Montana-Dakota Utils. Co.*, 181 F.2d 19, 22 (8th Cir. 1950), *aff'd*, 341 U.S. 246 (1951). That is no less true of retroactive rate changes.

Consider section 206(b), which directs FERC to establish a "refund effective date" upon the commencement of a section 206 proceeding. 16 U.S.C. § 824e(b). If FERC eventually finds that the rate being charged is not just and reasonable, it may provide refunds for "amounts paid," during the pendency of the section 206 proceeding, "in excess of those which would have been paid under the just and reasonable rate." *Id.* When FERC exercises this authority, it permissibly effectuates what might be thought of as "retroactive . . . rate decreases." *City of*

*Anaheim v. FERC*, 558 F.3d 521, 524 (D.C. Cir. 2009); *cf. Verso Corp. v. FERC*, 898 F.3d 1, 10 (D.C. Cir. 2018) (explaining that section 206(b) does not endow FERC with "concomitant authority . . . to retroactively correct rates that were too low"). If the filed-rate doctrine operated as a categorical bar to all "retroactive" rate modifications, section 206(b) would be a dead letter. But, by concluding otherwise, we have given effect to the Congress's command, recognizing section 206(b) for what it is: "a narrow exception" to the filed-rate doctrine's general prohibition of retroactive rate modifications. *Exxon Mobil Corp. v. FERC*, 571 F.3d 1208, 1211 (D.C. Cir. 2009); *see E. Tenn. Nat. Gas Co. v. FERC*, 863 F.2d 932, 942 (D.C. Cir. 1988) (explaining that an analogous refund provision in the Natural Gas Act is a "statutory exception to the rule prohibiting retroactive rate changes"). We do not mean to suggest that the DPL Customers are necessarily entitled to a refund under section 206(b).[5] We hold only that labeling the relief they seek as "retroactive" should not foreclose the possibility that it is available under section 206.

FERC also contends that it could not "render the Third Circuit's judgment economically meaningless," FERC Br. at 28, because that court "expected" its decision to have certain "economic effects," *id.* at 36. We disagree. To start, we do not share FERC's certainty about the effects the Third Circuit expected its decision to have. That court said only that its application of the filed-rate doctrine "*could potentially* produce a harsh result." *PJM Power Providers Grp.*, 396 F.4th at 401 (emphasis added). That could be read to suggest that the Third Circuit was aware that FERC had not yet exhausted all the tools in its regulatory arsenal. Additionally, and more importantly, even if the Third Circuit did expect its decision to have certain

---

[5] We leave that matter to FERC for resolution in the first instance. *Cf. City of Anaheim*, 558 F.3d at 525.

economic effects, that expectation would have been irrelevant. The Third Circuit is a court, "not an economic regulator." Reply Br. at 8. And when a court finds that an "agency based its decision upon an improper legal ground," the agency "might later . . . reach the same" or a similar "result for a different reason." *FEC v. Akins*, 524 U.S. 11, 25 (1998). Nothing required FERC to adopt a use-it-or-lose-it approach when considering the different ways it might address the problems caused by PJM's forecasting error. And we decline to impose such a requirement without a statutory basis.

The Third Circuit's decision rejecting FERC's efforts to modify PJM's auction process under section 205 simply did not resolve whether FERC might later use its section 206 authority to set aside the auction result. In reaching a different conclusion, FERC committed legal error.

\* \* \*

For the foregoing reasons, the petition for review is granted. We vacate FERC's orders denying the Complaint and remand the case to FERC for further proceedings.

*So ordered.*